STATE ex rel. CALKINS and another vs. HARVEY.

After the repeal of section 17, chapter 6, R. S., 1858, by chapter 284 of the Laws of 1861, the persons who held the contract to do the public printing for the state were not authorized to make the newspaper publication of the laws provided for in that section; and the secretary of state was no longer required to furnish them with copies of the laws for that purpose.

After a change in the law which required an officer to perform a particular act, and under which a *mandamus* had issued commanding him to perform it, an attachment ought not to be granted against him for not continuing to comply with the writ, if he acts in good faith, according to his best judgment as to the effect of such change in the law; but in such case the relator should make a new application for a writ, so that a decision may be made as to the duty of the officer under the law as it then exists.

MOTION FOR AN ATTACHMENT against the defendant for refusing to comply with a peremptory *mandamus* granted against him by this court.

The opinion of the court upon a motion to quash the alternative writ of *mandamus* will be found in 13 Wis. R., 370. That opinion and the one which follows, contain a sufficient statement of the facts.

*Julius T. Clark*, for relators.

*J. H. Howe*, Attorney General, for respondent.

*By the Court*, PAINE, J. This is a motion for an attachment against the respondent, founded upon affidavits setting forth a refusal on his part to continue to comply with the peremptory writ of *mandamus*, previously awarded by this court, requiring him to furnish to the relators copies of the laws for publication in a newspaper. We held, in the opinion awarding that writ, that chap. 240, Laws of 1860, provided for an additional publication of the laws in a newspaper, to that provided for in sec. 17, chap. 6, R. S., and did

August 21.

June Term,
1861.

STATE
v.
HARVEY.

not interfere with the right of the person having the contract for the state printing, to make the publication required by the latter section. It appears upon this motion, that the secretary of state obeyed the writ and furnished the relators copies of the laws, until said section 17 was repealed by the legislature. He then ceased to furnish them, and this attachment is asked to compel him to continue. It was claimed by the counsel for the relators, that the decision awarding the writ was conclusive upon the question now presented. But we think this is clearly not so. A decision requiring an officer to perform some act which the law then enjoins upon him, cannot have the effect of compelling him to continue to perform that act, after the law has ceased to require it. It is true that a question is made here, whether the repeal of sec. 17 changes in any respect the rights of the relators. But assuming that it did, so that if the writ should be now asked for the first time it must be refused, the position certainly cannot be correct, that the court is required by its former decision, awarding the writ when the relators were entitled to the copies, to continue to compel the s  tary to furnish them, though the relators no longer have any right to them. And however the question as to the effect of the change of the law upon their rights might ultimately be decided, we think it a sufficient answer to the motion for an attachment, to say that by the change of the law new questions were presented which were not involved in the former decision, and that an officer acting in good faith, according to his best judgment upon the effect of such change of the law, ought not to be punished by attachment, even if mistaken in his judgment; but the party should make a new application, so that a new decision might be made upon the facts and the law then existing.

But we are of the opinion that the repeal of sec. 17 put an end to the right of the relators to make the publication in question. The only possible reason why it did not have that effect, would be that it was so secured to the relators by their contract for the state printing, that it was beyond the power of the legislature to change it. But independently of any express reservation in the contract itself, of the power on the

June Term, 1861

STATE v. HARVEY.

part of the legislature to change the laws .in force at the time the contract was made, in respect to the quantity or kind of printing to be done, I think that by any fair construction of the contract, and according to the plain intention of the parties, such power would exist. Such a contract is not to do through the whole term for which it runs, exactly the quantity and kind of printing which the laws in force at the time it was entered into might require. But it is to do whatever printing might be required for the state, leaving the amount and kind subject to the direction of the legislature. In the contract with the relators, this power is, from abundant caution, reserved. But in the absence of such a reservation, the very nature, scope and object of the contract itself, seem to lead necessarily to the conclusion that the parties intended such power to exist. Printing for various purposes is required for all the most important departments of the government, and in carrying into execution measures of public policy. The laws in respect to conducting these departments and executing such measures, may require frequent changes or amendments. If in making such changes, new kinds and amounts of printing should be necessary, would it be requisite to make a new contract for that purpose, or would they be covered by the contract then in existence, requiring the contractor to do all the printing for the state ? I think clearly the latter would be true. So on the other hand, if by such changes some printing which might have been required at the time the contract was entered into, should cease to be necessary, would the legislature be bound to have it done through the whole term of such contract ? It is impossible to suppose that the parties intended any such result, or that the state would ever consent, for the purpose of entering into a printing contract, to preclude itself from making such changes in the laws as public policy might require, except upon the condition of continuing to do printing which such changes had rendered utterly useless. The object of the contractor was to obtain the right to do whatever printing the state might want, but not to obtain a guarantee that it would continue to require any specific quantity or kind. I concede that if the latter could be fairly

said to have been the meaning of the parties in making the contract, then the legislature could not change the law in that respect. But the obvious motives against it, as well as the language of the contract itself, seem to entirely exclude such an idea.

But in this contract, there can be no room for a question, as far as printing is concerned, for the power is expressly reserved in the contract itself. The notice upon which the contract was let, states that this power would be reserved in the contract, and the contract refers to the notice and makes its terms and conditions a part of itself. It is true that a decision of this court has established a distinction between printing and publishing, and that the reservation in the contract relates only to printing. But it is also true that the contract itself provides only for printing, and according to the distinction referred to, looking at the contract alone, no publication is provided for by it. And it was said in the former opinion of this court, that the "newspaper publication of the laws did not seem to have ever been the specific subject of contract between the state and the printer." Still the law at that time required the state printer to publish the laws in a newspaper, and under a contract providing only for printing we held he was entitled to make that publication. If a contract to do printing, included in effect that publication, notwithstanding the distinction before stated, it would seem, by the same reasoning, that a reservation in that contract, of the power to change any law on the subject of printing, should be held to include the law requiring such publication. It would be giving to the word printing the same effect in the reservation of power, as it had in the other parts of the contract.

But as already said, I do not consider the power to make the change as dependent on the reservation, and even though full effect be given to the distinction between publishing and printing, I think so far as either was provided for in the contract, it was to do what might be required by law, leaving the law subject to change by the legislature.

For these reasons the motion should be denied.